**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
────────────────────────────────────

**NATIONAL SPECIALTY INSURANCE COMPANY,**

                    **Plaintiff,**          06 Civ. 4210 (JGK)

       - against -               **OPINION AND ORDER**

**218 LAFAYETTE ST. CORP. LLC T/A THE FALLS,**

                    **Defendant.**
────────────────────────────────────

**JOHN G. KOELTL, District Judge:**

The plaintiff, National Specialty Insurance Company ("NSIC") brings this action pursuant to the Federal Declaratory Act, 28 U.S.C. § 2201, and Rule 57 of the Federal Rules of Civil Procedure seeking a declaratory judgment that an insurance policy issued to the defendant, 218 Lafayette St. Corporation LLC t/a The Falls ("The Falls"), is void ab initio. There is diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). The plaintiff now moves for summary judgment to avoid the contract ab initio or, alternatively, to have the insurance policy reformed.

**I.**

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Gallo v. Prudential Residential Servs. Ltd. P'ship, 22 F.3d 1219, 1223 (2d Cir. 1994). The trial court does not resolve issues at this stage, but rather discerns whether material facts are in issue. See Gallo, 22 F.3d at 1224. The moving party bears the initial burden of informing the district court of the basis for its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323.

Summary judgment is appropriate if it appears that the non-moving party cannot prove an element that is essential to the non-moving party's case. See Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 805-06 (1999); Celotex, 477 U.S at 322; Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citing United States v. Diebold, Inc., 369 U.S. 654, 655 (1962)); see also Gallo, 22 F.3d at 1223. If the moving party meets its initial burden of showing a lack of a material issue of fact,

the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The nonmoving party must produce evidence in the record and "may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." <u>Ying Jing Gan v. City of New York</u>, 996 F.2d 522, 532 (2d Cir. 1993).

**II.**

The following facts are undisputed, unless otherwise noted.

NSIC is an insurance company with its principal place of business located in Texas. (Plaintiff's Local Rule 56.1 Statement ("Pl's 56.1 Stmt.") ¶ 1; Defendant's Response to Plaintiff's Local Rule 56.1 Statement ("Def's 56.1 Reply Stmt.") ¶ 1.) Since 2004, RCA Insurance Group ("RCA") has served as an insurance underwriter for NSIC and has issued insurance policies in New York under RCA's food and beverage program. (Pl's 56.1 Stmt. ¶ 1; Def's 56.1 Reply Stmt. ¶ 2). The policies are issued according to underwriting guidelines, which require an insurance policy to contain "a full assault and battery exclusion on both [general liability] and Liquor coverages" when the insured uses "[b]ouncers, door persons, or any other security personnel." (Pl's 56.1 Stmt. Ex. J, at 4.) Such an exclusion removes from the scope of coverage any damage arising out of an assault or

3

battery that occurs at the insured's establishment. RCA has the power to bind NSIC in administering this program. (Pl's 56.1 Stmt. ¶ 4; Def's 56.1 Reply Stmt. ¶ 4.)

The Falls is a restaurant incorporated under the laws of New York State with its principal place of business at 218 Lafayette Street in New York City. (Defendant's Local Rule 56.1 Counter Statement ("Def's 56.1 Counter Stmt.") ¶¶ 1, 3; Plaintiff's Response to Defendant's Local Rule 56.1 Counter Statement ("Pl's 56.1 Reply Stmt.") ¶¶ 1, 3.) In the summer of 2004, Michael Dorrian, the owner of The Falls, hired Durkin Agency ("Durkin"), an insurance broker, to procure insurance for the restaurant. (Def's 56.1 Counter Stmt. ¶¶ 5-8; Pl's 56.1 Reply Stmt. ¶¶ 5-8.) Using information provided by Dorrian, Durkin prepared and submitted an application for insurance to RCA. (Def's 56.1 Counter Stmt. ¶ 9; Pl's 56.1 Reply Stmt. ¶ 9.) The defendant answered "no" to the following questions on the application: "Entertainment"; "Are Any Bouncers, Door Person or Security Used, if yes Describe Type and Purpose"; "Are Any Non-Employee Security Services Hired or Contracted, if Yes Describe Type and Purpose." (Pl's 56.1 Stmt. Ex. F, at 2, 3) On August 6, 2004, RCA issued a one-year insurance policy to The Falls on behalf of Everest National Insurance Company. (Def's 56.1 Counter Stmt. ¶ 16; Pl's 56.1 Reply Stmt. ¶ 16.) The policy did not contain an assault and battery exclusion.

In July of 2005, Durkin again prepared and submitted an insurance application to RCA. (Def's 56.1 Counter Stmt. ¶ 33; Pl's 56.1 Reply Stmt. ¶ 33.) The 2005 application was a photocopy of the 2004 application submitted to RCA, with only the date having been changed. (Def's 56.1 Counter Stmt. ¶¶ 19-27; Pl's 56.1 Reply Stmt. ¶¶ 19-27.) The answers to the entertainment and security questions remained the same. (Def's 56.1 Counter Stmt. ¶ 29; Pl's 56.1 Reply Stmt. ¶ 29; see Pl's 56.1 Stmt. Ex. G, at 2, 3.) RCA issued a one-year insurance policy on behalf of the plaintiff for the policy period beginning August 6, 2005 and ending August 6, 2006, again without an assault and battery exclusion. (Def's 56.1 Counter Stmt. ¶ 34; Pl's 56.1 Reply Stmt. ¶ 34.)

Consistent with its practice, RCA hired Alessio Inspection Services to inspect The Falls on August 12, 2005. (Def's 56.1 Counter Stmt. ¶¶ 37-38; Pl's 56.1 Reply Stmt. ¶¶ 37-38.) The inspection revealed the presence of both live entertainment and security at The Falls. (See Pl's 56.1 Reply Stmt. Ex. A, at 1.) Alessio submitted its report to RCA on August 22, 2005. Because the underwriting guidelines required that an insurance policy contain an assault and battery exclusion when an insured hosted entertainment or used security, RCA cancelled the defendant's contract on December 13, 2005. (See Pl's 56.1 Reply Stmt. Ex. B.) The letter noticing cancellation stated the grounds for

cancellation: "Underwriting Reasons: Material Misrepresentation – Entertainment." (Id.) No cancellation was sent on the grounds that The Falls used security. On December 21, 2005, Michael Dorrian advised RCA that although The Falls had hosted a guitar player on occasion during the summer, no entertainment was currently provided and none would be provided in the future. (Id., Ex. C.) On January 17, 2006, RCA reinstated the defendant's insurance policy, again without an assault and battery exclusion. (Pl's 56.1 Stmt. Ex. L., at 1) Whether RCA was aware of the presence or absence of security at The Falls upon reinstatement is unclear.

NSIC became aware of the presence of security after a security guard, whom the defendant employed, allegedly murdered a patron after she left The Falls on February 25, 2006. On May 11, 2006, NSIC notified the defendant that it would seek a declaration voiding the policy ab initio on the grounds that the defendant had made a material misrepresentation of fact on its 2005 application for insurance with regard to the presence of security. (Id.) On May 18, 2006, NSIC sent a reimbursement check in the amount of $17,960.00 to the defendant, which represents the full premium including fees and taxes paid by the defendant. (Id., Ex. M.)

**III.**

The plaintiff first seeks to void the contract pursuant to N.Y. Ins. Law § 3105, which provides that if an insurance policy is issued in reliance on a material misrepresentation, an insurer may avoid the policy from its inception. See id. § 3105(b); Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan, 77 F.3d 48, 52 (2d Cir. 1996); Phila. Indem. Ins. Co. v. Horowitz, Greener & Stengel, LLP, 379 F. Supp. 2d 442, 452 (S.D.N.Y. 2005); Wedtech Co. v. Fed. Ins. Co., 740 F. Supp. 214, 218 (S.D.N.Y. 1990).[1] The statute defines "misrepresentation" as a false "statement as to past or present fact, made to the insurer by, or by the authority of, the applicant for insurance or the prospective insured, at or before the making of the insurance contract as an inducement to the making thereof." N.Y. Ins. Law § 3105(a). A misrepresentation is "material" if "knowledge by the insurer of the facts misrepresented would have led to a refusal by the insurer to make such a contract." Id. § 3105(b); see also Vella v. Equitable Life Assurance Soc'y, 887 F.2d 388, 391 (2d Cir. 1989); Mutual Benefit Life Ins. Co. v. JMR Elecs. Corp., 848 F.2d 30, 32-34 (2d Cir. 1988). In determining whether the insurer would have issued the policy as written, the statute allows the Court to consider the insurer's

---

[1] The parties agree that New York substantive law applies and the Court can accept that agreement. See Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 91 (2d Cir. 2002).

practice with respect to insurance applications of a similar nature. N.Y. Ins. Law § 3105(c).

Ordinarily, materiality is a question of fact that should be submitted to a jury. But where the evidence as a whole can only lead to the conclusion that the insurance policy would not have been issued had the true state of affairs been known, a court may rule on the issue of materiality as a matter of law. See Mutual Benefit Life Ins., 848 F.2d at 32; Sebring v. Fidelity-Phenix Fire Ins. Co. of N.Y., 174 N.E. 761, 762 (N.Y. 1931). However, a conclusory statement that underwriting guidelines prohibited the issuance of a particular policy is insufficient to meet this burden without additional evidence. See First Fin. Ins. Co. v. Allstate Interior Demolition Corp., 193 F.3d 109, 118-19 (2d Cir. 1999); McDaniels v. Am. Bankers Ins. Co., 643 N.Y.S.2d 846, 847 (App. Div. 1996).

NSIC argues that the defendant's failure to disclose the presence of security at The Falls was a material misrepresentation within the meaning of the insurance law. NSIC alleges that had it known The Falls employed security, it would not have issued the insurance policy without an assault and battery exclusion. RCA states that in issuing insurance policies, the underwriting guidelines strictly prohibited issuance of insurance policies without assault and battery exclusions where security was employed.

In response, the defendant asserts three arguments: (1) that the misrepresentation was not material because the plaintiff issued other insurance policies without assault and battery exclusions even though the insured indicated that it used security; (2) that the application form questions regarding security were ambiguous and therefore no misrepresentation could be made; and (3) that, assuming a material misrepresentation, the misrepresentation was made by Durkin and not the defendant. Each of the arguments will be addressed in turn.

**A.**

The defendant argues that any misrepresentation was not material because NSIC and RCA cannot satisfy the test for materiality under New York Insurance law: that knowing the defendant employed security "would have led to a refusal by the insurer to make such a contract." Vella, 887 F.2d at 391; see also N.Y. Ins. Law § 3105(a).

In support, the defendant identifies instances where NSIC allegedly issued insurance policies that did not contain assault and battery exclusions, even though the applicants indicated that they used security. The defendant's examples and its expert's conclusions, however, are unconvincing. With respect to the nine cases where RCA wrote policies without assault and battery exclusions despite "yes" answers to the security questions, NSIC shows that Alessio inspections clarified the

insured's security status: in six cases the insured employed greeters, hosts or hostesses, guest-list checkers, ticket collectors, but not security; in the remaining three cases, the policies were either rewritten to include assault and battery exclusions, or were cancelled outright.

With respect to the forty-one cases where applicants did not indicate the presence or absence of security, the plaintiff explains that its policy is to construe initially a blank answer as a "no." The plaintiff's initial issuance of these policies therefore was consistent with its underwriting guidelines. Furthermore, the plaintiff relied on Alessio inspections to confirm the assumption that security was not used. Although the defendant attempts to use these blank-answer applications as evidence that NSIC violated its underwriting guidelines, it fails to demonstrate that the policies were issued without exclusions upon discovering that security was used. Thus, the defendant's reliance on these examples is unconvincing.

NSIC demonstrates that the defendant made a material misrepresentation on its 2005 application for insurance when it indicated that "Bouncers, Door Persons or Security" were not used at The Falls. NSIC asserts more than a conclusory statement that it would not have issued the policy had it known The Falls used security. Furthermore, the defendant provides no examples demonstrating that the plaintiff wrote exclusion-less policies

when applicants used security. Because nothing suggests that NSIC would have deviated from the underwriting guidelines if it had known The Falls employed security, no issue of material fact exists as to a material misrepresentation.

**B.**

The defendant argues next that a material misrepresentation could not have been made because the security questions on RCA's application form were ambiguous. Whether a question on an insurance application form is ambiguous is a question of law for the Court. Parks Real Estate Purchasing Group v. St. Paul Fire & Marine Ins. Co., 472 F.3d 33, 42 (2d Cir. 2006); Garcia v. Am. Gen. Life Ins. Co., 695 N.Y.S.2d 420, 421 (App. Div. 1999). If a question is found to be ambiguous to a "reasonable person in the insured's position" and a reasonable person might have interpreted the question in the same way, any answer to the ambiguous question may not form the basis of a claim of misrepresentation by the insurance company. Garcia, 695 N.Y.S.2d at 421.

In this case, the 2005 application form asked two questions regarding the presence of security: whether "Bouncers, Door Person or Security" were used; and whether "non-employee security services" were employed. The defendant answered "no" to both questions. The defendant attempts to demonstrate the ambiguity of the questions through deposition testimony.

The questions could not reasonably be viewed as ambiguous. The defendant obtained ID checkers from NEC Security. (Def's 56.1 Counter Stmt. ¶ 41; Pl's 65.1 Reply Stmt. ¶ 41.) A reasonable person would have construed the wording of the question – particularly the word "security" – to include NSE Security personnel. Moreover, Michael Dorrian admitted that The Falls employed people to stand outside and check identification. (See Def's 56.1 Reply Stmt. Ex. 3, at 26:13-15; see also Def's 56.1 Counter Stmt. ¶ 43 ("ID Checkers permitted only people of drinking age to enter The Falls.") (emphasis added).) If the ID checkers kept patrons from entering The Falls, a reasonable person would view them at least as "doorpersons."

Finally, Michael Dorrian readily admitted in his deposition that the answers to the questions should have been "yes," (Pl's 56.1 Reply Stmt. Ex. E, at 92:13 to 93:4), and stated that The Falls had "bouncers, door persons or security" by July of 2005, (id. at 94:16-18). However, in his declaration in opposition to the current motion, Dorrian attempts to disavow his prior deposition testimony. (Def's 56.1 Reply Stmt. Ex. 13 ¶¶ 3-5.) The Court of Appeals for the Second Circuit, however, has made it clear that deponents cannot contradict their prior testimony with affidavits in an effort to avoid summary judgment absent new evidence or a showing that the statements are not in fact contradictory. See Trans-Orient Marine Corp. v. Star Trading &

Marine, Inc., 925 F.2d 566, 572-73 (2d Cir. 1991); Perma Research & Dev. Co. v. Singer Co., 410 F.2d 572, 578 (2d Cir. 1964). Therefore, Dorrian's declaration, which is a transparent effort to contradict his deposition testimony, cannot forestall summary judgment.

The defendant's argument that a court in this district already has found the questions and application form at issue to be ambiguous with respect to ID checkers is without merit. While the court in Fire & Cas. Ins. Co. of Conn. v. 2207 7th Ave. Rest. Corp. d/b/a Jimmy's Uptown, No. 03 Civ. 4739, 2004 WL 1933781 (S.D.N.Y. Aug. 30, 2004), found that the entertainment questions were ambiguous, the court did not find the question with respect to security to be ambiguous. Rather, it found that there was insufficient evidence to void the policy because there was insufficient evidence that the insurance company would have refused to issue the policy if the questions were answered truthfully. See id. at *5-*6. Accordingly, this case does not support defendant's contention that the questions were ambiguous.

The insurance application questions regarding security are unambiguous. At the very least, ID checkers from NSE Security reasonably fall within the ambit of "Bouncers, Door Person or Security." Therefore, the defendant cannot defeat a finding of materiality by arguing ambiguity.

## c.

Assuming a material misrepresentation was made, the defendant argues that the misrepresentation should be attributed to the Durkin Agency and not to the defendant.

Under New York law, an insurance broker is an agent when the broker procures insurance on behalf of the insured. See N.Y. Ins. Law § 2101(c); Evvtex Co. v. Hartley Cooper Assocs., 102 F.3d 1327, 1331-32 (2d Cir. 1996). The broker's role as an agent generally makes its actions attributable to the insured. For example, in Falcon Crest Diamonds v. Dixon, an insured was bound by the actions of its broker even though the insured did not sign the insurance forms. See 655 N.Y.S.2d 232, 235 (S. Ct. 1996). Moreover, even a broker's acts that are not specifically authorized by the insured are binding on the insured, so long as the broker is operating within the scope of its real or apparent authority in procuring insurance for the insured. See Amalgamated Mut. Cas. Co. v. Schultz, 207 N.Y.S.2d 890, 892 (S. Ct. 1960); see also Citibank, N.A. v. Nyland (CF8) Ltd., 878 F.2d 620, 624 (2d Cir. 1989) ("[T]he established rule [is] that a principal is liable to third parties for the acts of an agent operating within the scope of his real or apparent authority.").

Here, the parties agree that Durkin was the defendant's insurance broker and, in submitting the 2005 application to RCA, was procuring insurance for the defendant. (Def's 56.1 Counter

14

Stmt. ¶ 5; Pl's 56.1 Reply Stmt. ¶ 5.) Thus, any alleged misrepresentations that Durkin made in submitting the insurance application are attributable to and binding upon the defendant. The fact that Dorrian did not personally sign the form in 2005 or that Durkin submitted the form without first notifying the defendant is immaterial.[2] Because the Durkin Agency was employed as the defendant's insurance broker and was within the scope of its authority in procuring insurance for the policy period between August 2005 and August 2006, any misrepresentation made by Durkin is attributable to the defendant.

**IV.**

Notwithstanding a finding of material misrepresentation, the defendant argues that NSIC is not entitled to summary judgment because it is precluded by waiver or estoppel from bringing a claim to avoid the insurance policy.

Waiver applies when an insurance company acts in a way that demonstrates a "'voluntary and intentional relinquishment of a known right.'" Burt Rigid Box, Inc. v. Travelers Prop. Cas. Corp., 302 F.3d 83, 95 (2d Cir. 2002) (quoting Albert J. Schiff Assocs., Inc. v. Flack, 51 N.E.2d 84 (N.Y. 1980)). Under New

---

[2] The defendant's argument that a signature is required in order for an insured to adopt his broker's statements is without merit. See Falcon Crest Diamonds, 655 N.Y.S.2d at 235. While the cases cited by the defendant do hold that affirmatively signing insurance applications amounts to adoption, they do not preclude a finding that a broker's statements can be attributable to the insured even if the documents are not signed.

York law, it is well settled than an insurance company waives its right to bring a claim avoiding an insurance policy if it fails to act within a reasonable amount of time after learning of the misrepresentation. See Republic Ins. Co. v. Masters, Mates & Pilots Pension Plan, 77 F.3d 48, 52 (2d Cir. 1996). As the Court of Appeals has explained, "Courts may find waiver where, for example, an insurance company disclaims coverage for failure to satisfy one condition precedent but neglects to assert other such conditions." Burt Rigid Box, 302 F.3d at 95. Thus, NSIC waived its right to avoid the policy ab initio if NSIC knowingly and voluntarily relinquished its right to bring such a claim. Courts have found that an insurance company relinquishes its right when it knows of a material representation but continues to accept premiums from the insured for an unreasonable amount of time. See Garbin v. Mutual Life, 356 N.Y.S.2d 741, 742 (App. Div. 1974) (per curiam) (finding that insurer's demand for and acceptance of four quarterly payments over thirteen months precluded action for rescission); Johnson v. Mutual Benefit Health & Accident Ass'n of Omaha, 168 N.Y.S.2d 879, 882-83 (App. Div. 1957) (noting that "[i]t would be difficult to envisage more cogent evidence of an intent to abandon rescission" where insurer demanded and accepted premiums after notifying insured of misrepresentation and tendering refund).

Estoppel applies where "an insurer acts in a manner inconsistent with a lack of coverage and the insured reasonably relies on those actions to its detriment." Burt Rigid Box, 302 F.3d at 95. In this case, NSIC would be estopped from seeking to void the policy ab initio if by its actions it indicated that it was continuing coverage despite the alleged misrepresentation and the defendant relied on those actions. See Johnson, 168 N.Y.S.2d at 882-83.

At the very least, the defendant has raised genuine issues of material fact as to whether the plaintiff should be barred by waiver or estoppel from voiding the policy. The parties do not dispute that following the Alessio inspection in August of 2005, the plaintiff became aware of the presence of both entertainment and security. The cancellation notice sent to The Falls in December of 2005, however, stated that the presence of entertainment prompted termination, and did not mention security. (Pl's 56.1 Reply Stmt. Ex. B.) Indeed, the RCA Corporate Representative, Thomas Hartmann, said that "only the entertainment went out on the cancellation notice not the security," and that a cancellation notice with regard to security was never sent. (Def's 56.1 Reply Stmt. Ex. 7, at 162:6-18.) Hartman explained that this was an "error" on RCA's part. (Id.) Ultimately, the policy was reinstated in January of 2006 following Dorrian's notification to RCA that The Falls no

longer had entertainment. Insurance premiums were paid to and accepted by RCA until May of 2006.

At the very least, the defendant has raised a material issue of fact with respect to whether the plaintiff waived the alleged misrepresentation with respect to the presence of security and knowingly and voluntarily chose to continue the policy despite the presence of security. The plaintiff stresses that it did cancel the policy in the face of the presence of entertainment but ignores that the policy was reinstated without any representations with respect to the presence of security. The plaintiff then continued to receive payments on the policy and the defendant plainly was not required to attempt to obtain other insurance because the plaintiff was continuing to provide insurance. In view of the factual support for the defenses of waiver and estoppel, the plaintiff is not entitled to summary judgment that the policy should be rescinded.

## V.

As an alternative to rescinding the policy, the plaintiff urges the Court to reform the contract to include the assault and battery exclusion under the doctrine of unilateral mistake.[3]

---

[3] The plaintiff addresses mistake generally and the defendant discusses both mutual and unilateral mistake. Mutual mistake occurs where the parties "share the same erroneous belief and their acts do not in fact accomplish their mutual intent." Healy v. Rich Prods. Corp., 981 F.2d 68, 73 (2d Cir. 1992) (citation omitted). The parties in this case plainly did not have a mutual

Under New York law, a contract may be reformed on the basis of unilateral mistake when the knowing party fraudulently conceals the mistake. See Sudul v. Computer Outsourcing Servs., 917 F. Supp. 1033, 1044 (S.D.N.Y. 1996); Chimart Assocs. v. Paul, 489 N.E.2d 231, 234 (N.Y. 1986). The party claiming unilateral mistake "bears the burden of proving both its own mistake and fraudulent concealment by the other party." See Winmar Co., Inc. v. Teachers Ins. & Annuity Ass'n of Am., 870 F. Supp. 524, 537 (S.D.N.Y. 1994) (citing Chimart Assocs., 489 N.E.2d at 233-34). The burden is substantial, and the party alleging fraud must demonstrate that it exists "in no uncertain terms." Collins v. Harrison-Bode, 303 F.3d 429, 435 (2d Cir. 2002) (citations omitted).

In this case, the plaintiff was unaware of the presence of security when the insurance policy was initially issued on August 6, 2005. Meanwhile, the defendant, in hiring ID checkers and a security firm, knew that security was present at the restaurant when the insurance policy became effective. Thus, a unilateral mistake exists. There is an issue of material fact, however, as to whether there is fraud sufficient to justify reformation. Dorrian denied an awareness that any misrepresentations were being made. (See, e.g., Def's 56.1 Reply

---

intent to include an assault and battery exclusion in the policy. Accordingly, only unilateral mistake is at issue.

Stmt. Ex. 3, at 80:15 to 82:9, 98:12 to 99:13.) He testified further that he did not know what an assault and battery exclusion was, or whether his insurance policy included such an exclusion. (Id. at 117-21.) Finally, Dorrian claims that he neither received a copy of nor reviewed the 2005 application before Durkin submitted it to RCA. (Id. at 83:19-21.) Thus, there is at least an issue of fact whether Dorrian knowingly misrepresented that the establishment did not have security. Therefore, the plaintiff is not entitled to summary judgment on its claim of reformation based on alleged unilateral mistake.

Because a question of material fact exists as to whether the mistake of fact was fraudulently concealed, the plaintiff cannot carry its burden to justify reformation.

## CONCLUSION

For the reasons explained above, the plaintiff's motion for summary judgment is **denied**.

SO ORDERED.

Dated: New York, New York
March 7, 2008

John G. Koeltl
United States District Judge